**United States District Court**
For the Northern District of California

1
2
3
4
5                       UNITED STATES DISTRICT COURT
6                      NORTHERN DISTRICT OF CALIFORNIA
7
8   JOSE PEREZ MEDINA,                         No. C-06-2480 EMC
9               Petitioner,
10        v.                                   **ORDER DENYING HABEAS PETITION**
11  JEANNE WOODFORD, Warden,
12              Respondent.
    _____/
13
14
15        This is a habeas case filed by a state prisoner, Jose Perez Medina, pursuant to 28 U.S.C. §
16  2254.  Mr. Medina was convicted by a jury in Santa Clara County of twelve counts of sexually
17  abusing two minor victims.  As grounds for habeas relief, Mr. Medina asserts that his due process
18  rights were violated in multiple ways.  He also argues ineffective assistance of appellate and trial
19  counsel.  Having reviewed the parties' briefs and accompanying submissions, the Court hereby
20  **DENIES** the petition for relief.
21                    I.    **FACTUAL & PROCEDURAL BACKGROUND**
22        On January 30, 2003, Mr. Medina was charged by information with (1) five counts of
23  forcible lewd or lascivious acts on a child (Cal. Pen. Code § 288(b)); (2) five counts of forcible oral
24  copulation (*id.* § 288a(c)); (3) one count of forcible sexual penetration (*id.* § 289(a)); and (4) one
25  count of lewd or lascivious act on a child (*id.* § 288(a)).  *See* CT 109-21 (information).  Each of the
26  counts was based on the alleged sexual abuse of a child by the name of Elena, except for count 12,
27  which was based on the alleged sexual abuse of another child, Jennifer.  Mr. Medina was Elena's
28  aunt's brother-in-law.  *See* RT 128.  He was Jennifer's godfather.  *See* RT 53.

United States District Court
For the Northern District of California

1     The evidence presented at Mr. Medina's trial is discussed in the state appellate court's

2   opinion of October 14, 2004, *see People v. Medina*, Nos. H026107, H027596, 2004 Cal. App.

3   Unpub. LEXIS 9353 (Cal. Ct. App. Oct. 14, 2004), and reflected in the Reporter's Transcript which

4   is a part of this Court's record ("RT").  To wit, at trial, both Elena and Jennifer testified about the

5   sexual abuse they had suffered.

6     Elena testified that Mr. Medina began molesting her in 1988, when she was eight or nine

7   years old.  There were at least five occasions on which Mr. Medina forced her to touch his penis, *see*

8   RT 134-37, and at least five occasions on which he forced her to put her mouth on his penis.  *See* RT

9   138-39.  The former occasions took place either in the bathroom or in the living room of Mr.

10   Medina's house; the latter occasions took place in the bathroom.  *See* RT 135-37, 139.  On one

11   occasion, Mr. Medina inserted his finger inside her vagina.  *See* RT 141.

12     Elena did not tell anyone what Mr. Medina had done until early in 2002.  At that time, Elena

13   was living in Nevada, and her mother was planning to take Elena's daughter (five or six years old at

14   the time) to visit Elena's aunt so that the daughter would likely be around Mr. Medina.  Elena did

15   not want that.  *See* RT 144-45.

16     Jennifer testified that Mr. Medina had been sexually inappropriate with her on three

17   occasions, each of which took place during 1991 at Mr. Medina's house when she was about nine or

18   ten years old.  In one incident, Jennifer walked into Mr. Medina's house and saw him sitting on a

19   couch reading a magazine.  He called her over and showed her a pornographic magazine.  The

20   incident concluded when someone came running to the front door, saying that there had been a car

21   accident and that someone needed to call 911, which Jennifer did.  *See* RT 67-69.

22     In another incident, Jennifer was having a garage sale with Mr. Medina's daughter at Mr.

23   Medina's house, and Jennifer went inside to get some tape.  Mr. Medina was inside and, when he

24   saw Jennifer, he asked her to show him how much money she had.  Jennifer was excited because she

25   had just got a new wallet.  As she showed him the money, Mr. Medina came up behind her and

26   began rubbing her chest.  Mr. Medina also pressed himself against her, and Jennifer felt a bulge

27   against her back.  *See* RT 74-76.  It did not feel like a belt buckle to her.  *See* RT 107.

28

2

United States District Court
For the Northern District of California

1    Finally, in the last incident, Jennifer was playing in the backyard of Mr. Medina's house,

2   more specifically, in a tool shed that also served in part as a clubhouse for the children.  Mr. Medina

3   came inside, told her that he had been bitten by a spider, and asked her if she wanted to see.  Jennifer

4   glanced at Mr. Medina out of the corner of her eye and saw that he was holding his penis.  She told

5   him he did not want to look and he left.  *See* RT 70-73.

6    Not long thereafter, Jennifer told her mother about the three incidents.  *See* RT 60, 76-80.

7   Jennifer's mother did not press charges but her family stopped having contact with Mr. Medina and

8   his family.  *See* RT 83-84.

9    In addition to the testimony of Elena and Jennifer, the prosecution presented at trial

10   testimony from another woman, Maria, who, when she was a child, had allegedly been sexually

11   abused by Mr. Medina.  Maria's testimony was offered to corroborate the testimony of Elena and

12   Jennifer.  Mr. Medina was Maria's uncle by marriage.  *See* RT 218.  Maria testified that Mr. Medina

13   began to molest her in or about 1976, when she was four years old, and that the abuse continued

14   until she was seven.  *See* RT 221.  The first time he abused her took place during an outing at the

15   beach.  According to Maria, he pulled her aside, grabbed her hand, put her hand on his penis, and

16   had her masturbate him.  *See* RT 226.  On at least two other occasions, Mr. Medina had Maria

17   masturbate him in an alley next to her family's apartment; he also had Maria masturbate him in the

18   master bedroom of his house and at the side of his house.  *See* RT 223-25, 227.  Finally, on another

19   occasion, Mr. Medina assaulted her in one of the bedrooms of her family's apartment.  During this

20   incident, Mr. Medina took off Maria's shirt, rubbed her chest, pulled his pants down, and lay on top

21   of her.  *See* RT 227-28.  Maria told her mother about what Mr. Medina was doing when she was

22   about about six years old.  *See* RT 232.

23    In addition to Maria, the prosecutor had Maria's older sister testify because she had

24   witnessed the incident that took place at the beach.  *See* RT 204-05.  Maria's sister was

25   approximately eight at the time of the incident.  *See* RT 212.  Maria's sister did not tell their mother

26   about what she had seen until years later, perhaps after she heard that something happened between

27   Jennifer and Mr. Medina.  *See* RT 209-10.  Maria's sister told their mother that there was an incident

28   but she did not give specifics.  *See* RT 214.

United States District Court

For the Northern District of California

Finally, the prosecution had Lupe Guzman, Mr. Medina's sister, testify as a witness during its case-in-chief.  Ms. Guzman testified that, some time after the abuse involving Jennifer was disclosed, a meeting was held which she attended along with Mr. Medina's wife, Maria's mother, and Jennifer's mother.  The purpose of the meeting was so that Mr. Medina's wife could talk to Jennifer's mother and ask her not to report the matter to the police and to give Mr. Medina another chance.  Jennifer's mother agreed not to go to the police.  *See* RT 245-47.

In his defense, Mr. Medina had several witnesses testify.  Lieutenant Wayne Farquhar provided testimony that, in 1992, Jennifer's mother was interviewed during an investigation of Mr. Medina[1] and she told the police that Jennifer had never told her anything about being molested or inappropriately touched and that, if Jennifer had, she would have reported the matter to the police.  Jennifer's mother also stated that she did not even know who Mr. Medina was.  *See* RT 305-06.  Roberto Ruiz-Cervantes, a realtor, provided testimony about the size of the house where Elena was allegedly abused – *i.e.*, it was only 840 square feet.  *See* RT 313-14.  Maria's mother testified that she was only told by her daughters that Mr. Medina had masturbated in front of Maria – not that he had forced her to touch him.  *See* RT 322-23.  Maria's mother added, however, that she did not press her daughters for specifics about the incident.  *See* RT 324.  Maria's mother talked to Ms. Guzman about the incident and came to the conclusion that maybe Maria would forget and live a normal life.  *See* RT 325-26.  Maria's mother also testified that, years later, two meetings were held to discuss Mr. Medina's conduct.  The first meeting involved Maria's mother, her husband, Ms. Guzman, and several other individuals.  *See* RT 326.  The second meeting was the meeting discussed above which involved Jennifer's mother.  *See* RT 326.  Finally, both Mr. Medina's son and daughter testified in support of their father's case.[2]  The son testified that he never saw Mr. Medina behave inappropriately with the girls who visited the house.  *See* RT 343.  The daughter testified the same.  She also testified about a belt buckle that Mr. Medina typically wore.  *See* RT 345-47, 349-50.

---

[1]  Apparently, the investigation began after Maria called Child Protective Services about Mr. Medina.  The agency in turn advised the police.  *See* RT 307-08.

[2]  Mr. Medina's daughter also testified during the prosecution's case-in-chief.  At one point, she stated that her father had never done anything sexually inappropriate with her.  *See* RT 115.

United States District Court

For the Northern District of California

1    Ultimately, the jury rendered a verdict in favor of the prosecution and against Mr. Medina on

2  all eights counts.  *See* CT 352-74.

3    Mr. Medina thereafter appealed his conviction.  While his appeal was pending, he also filed a

4  state habeas petition.  A state court of appeal ordered that the habeas petition be considered with the

5  appeal.  On October 14, 2004, a state appellate court affirmed Mr. Medina's conviction and denied

6  the habeas petition.  *See People v. Medina*, Nos. H026107, H027596, 2004 Cal. App. Unpub. LEXIS

7  9353 (Cal. Ct. App. Oct. 14, 2004).  The California Supreme Court denied Mr. Medina's petition for

8  review of the appellate court's decision on January 25, 2005, and subsequently denied his habeas

9  petition on November 29, 2006.  *See* Docket No. 27 (Exs. 8-10).

10    **II.   DISCUSSION**

11    This Court is required to analyze state habeas corpus claims under the Antiterrorism and

12  Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a court may entertain a petition

13  for writ of habeas corpus "[on] behalf of a person in custody pursuant to the judgment of a State

14  court only on the ground that he is in custody in violation of the Constitution or laws or treaties of

15  the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim

16  that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

17  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

18  established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in

19  a decision that was based on an unreasonable determination of the facts in light of the evidence

20  presented in the State court proceeding."  *Id.* § 2254(d).

21    A state court decision is "contrary" to Supreme Court authority if "the state court arrives at a

22  conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

23  decides a case differently than [the Supreme] Court has on a set of materially indistinguishable

24  facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an "unreasonable

25  application of" Supreme Court authority if "the state court identifies the correct governing legal

26  principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

27  the prisoner's case."  *Id.*  A district court "may not issue [a] writ [of habeas corpus] simply because

28  that court concludes in its independent judgment that the relevant state-court decision applied clearly

United States District Court

For the Northern District of California

1  established federal law erroneously or incorrectly.  Rather, that application must also be

2  unreasonable." *Id.* at 411; *see also Lockyard v. Andrade*, 538 U.S. 63, 75 (2003) (noting that a

3  decision challenged as an unreasonable application of Supreme Court law must not merely be

4  erroneous, but "objectively unreasonable").

5          In determining whether the state court's decision is contrary to, or involved an unreasonable

6  application of, clearly established federal law, a federal court looks to the decision of the highest

7  state court to address the merits of a petitioner's claim in a reasoned decision.  *See LaJoie v.*

8  *Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Where the state court reaches a decision on the

9  merits but provides no reasoning to support its conclusion, a federal habeas court independently

10 reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *See*

11 *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011).  However, the habeas petitioner still has the

12 burden of "showing there was no reasonable basis for the state court to deny relief."  *Harrington v.*

13 *Richter*, 131 S. Ct. 770, 784 (2011).

14         In the instant case, Mr. Medina argues that he is entitled to habeas relief because:

15 (1)     The prosecutor committed misconduct in his closing argument by improperly shifting the

16         burden of proof to the defense multiple times.

17 (2)     The trial court gave an instruction which allowed the jury to find Mr. Medina guilty so long

18         as it determined that he had committed the uncharged acts against Maria beyond a reasonable

19         doubt.

20 (3)     The trial court gave an instruction which allowed the jury to convict Mr. Medina based on

21         propensity evidence.

22 (4)     Mr. Medina's appellate counsel provided ineffective assistance by failing to raise the above

23         issues as part of the direct appeal.

24 (5)     The statute of limitations could be extended to capture Mr. Medina's conduct only if there

25         were clear and convincing evidence to corroborate Elena and Jennifer's claims, and there

26         was insufficient corroborating evidence.

27

28

(6)      On Count 12 (lewd or lascivious acts on a child), there was insufficient evidence to support the claim that Mr. Medina had masturbated when he came up behind Jennifer, rubbed her chest, and pressed up against her.

(7)      On Counts 1-5 (forcible lewd or lascivious acts on a child), there was insufficient evidence that Mr. Medina had used force against Elena when putting her hand on his penis.

(8)      On Counts 6-10 (forcible oral copulation), there was insufficient evidence that Mr. Medina had used force against Elena when putting his penis in her mouth.

(9)      On Counts 6-11 (forcible oral copulation and forcible sexual penetration), the jury verdict form did not require a finding that the statute of limitations had been extended.

(10)     Trial counsel provided ineffective assistance by failing to object to the verdict form with respect to Counts 6-11.

The Court addresses each of these arguments in turn below.

A.       Burden of Proof

Mr. Medina argues first that his right to due process was violated because, during the prosecution's closing argument, the prosecutor made multiple comments that improperly shifted the burden of proof from the government to Mr. Medina.  On this claim, the last reasoned decision was that rendered by the trial court itself.  *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (stating that, because "neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision"); *Foster v. Evans*, No. C 08-4269 RMW (PR), 2009 U.S. Dist. LEXIS 47214, at *4-5 (N.D. Cal. June 4, 2009) (stating that, "[w]hen a state procedural bar is applied by a state trial court and relief is summarily denied by the state's higher courts, a federal court looks to the last reasoned state court decision as the basis for the state court judgment," which was the state superior court decision); *see also Avila v. Galaza*, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (treating state court referee's report as the last reasoned state court decision, where report was summarily adopted by the court of appeal and petition for review to California Supreme Court was denied without comment).

The record reflects that the following took place during the trial court proceedings.  Near the outset of his closing argument, the prosecutor made the following statement to the jury: "I challenge

United States District Court

For the Northern District of California

1    the defense and listen carefully to their clos[ing] argument to see if they provide you with a

2    reasonable explanation that points to innocence." RT at 372. Defense counsel objected on the basis

3    that the prosecution was improperly shifting the burden of proof to Mr. Medina. The trial court

4    ruled that "the use of the word 'innocence' there is inappropriate so I'll sustain the objection as to

5    that." RT 372. Immediately after that ruling, the prosecutor stated: "Listen to the defense's

6    arguments and listen if during their arguments they can point to facts or if they do point to facts that

7    create a reasonable doubt." RT 372. This time there was no objection. The prosecutor proceeded to

8    argue to the jury that the government had proven "all the elements of all the charges . . . beyond a

9    reasonable doubt assuming the victims were truthful about what they said." RT 373.

10        After going through the elements of the various charges and the supporting evidence, the

11   prosecutor commented that "the defense has failed to present any evidence of bias or motive to lie

12   [on the part of the victims]." RT 390. Defense counsel interjected with the objection that the

13   government was "shifting [the burden] to the defense [because] under law we're not required to

14   [present anything]." RT 390-91. The trial court sustained the objection. *See* RT 391. The

15   prosecutor immediately followed that ruling with the statement that,

16            if you read the transcript, you will find that there is no evidence
             suggesting any bias or motive to lie. Nothing at all.

17
             So if you go back into the jury room and you think, well,
18           maybe they're lying because of whatever reason you can come up
             with, right, maybe they're making this up because of some obscure
19           reason. Reality is, ladies and gentlemen, there's no evidence here.
             [There is] no evidence at all. The defense has a right to present
20           evidence just like the people have the right to present evidence. Both
             sides – the defendant has a constitutional right to call anyone he wants.

21

22   RT 391. Defense counsel made the same objection, *see* RT 391 (stating that "[t]he people keep

23   shifting the burden as if the defense is supposed to do anything"), which the court sustained. *See* RT

24   391.

25        Defense counsel then asked that the prosecutor be admonished after which a side bar was

26   held. *See* RT 391. Following the side bar, defense counsel again asked the court to admonish the

27   prosecutor "not to attempt to shift the burden." RT 392. The court responded: "All right. The jury

28

1  will ignore that last statement in the argument by counsel.  Please restate your position . . . ."  RT

2  392.

3       The prosecutor then stated for the jury that

4      the burden in this case is mine.  I have to prove the case beyond a
   reasonable doubt.  I'm not trying to shift the burden to the defense.

5      They don't have to call witnesses, ladies and gentlemen.  But you may
   consider the failure of the defense to call logical witnesses.  If the

6      defense makes an assertion for which there's no evidence, you may
   consider the fact that they didn't call any witnesses to support that

7      assertion.  You may consider that in deciding the guilt of the defendant
   that if they did have favorable evidence to support an assertion, they

8      would have called that witness.

9  RT 392.

10       The prosecutor acknowledged that "the defense has presented some evidence" but criticized

11  that evidence as being insufficient to "cast a reasonable doubt."  RT 392.  With respect to one

12  witness, Lieutenant Farquhar, the prosecutor commented: "They [*i.e.*, the defense] haven't raised a

13  reasonable doubt because all Farquhar said was that Sarah Moreno [sic] [Jennifer's mother]

14  basically lied."  RT 395.  Defense counsel objected on the ground that, "again, he's shifting burden.

15  I don't have to raise a reasonable doubt.  He has to prove a case [beyond a] reasonable doubt."  RT

16  395.  Counsel also moved for a mistrial at that time.  *See* RT 395.  The trial court stated that it would

17  take up the motion shortly and further admonished the prosecution: "[D]o not shift the burden back

18  to the defense.  Make your arguments consistent with your burden, please."  RT 395.

19       The prosecutor responded by stating as follows:

20      Ladies and gentlemen, Officer Farquhar's testimony does not
   create a reasonable doubt.  Based on what he said, that doesn't create

21      reasonable doubt at all.  All it shows is that it corroborates the
   testimony of the other witnesses that this family wanted to cover this

22      up.

23      And again, ladies and gentlemen, I'm not trying to shift the
   burden.  I'm merely trying to show you that certain – the facts that the

24      defense has presented does not create a reasonable doubt.  There's no
   evidence that the defense presented upon which you can rely to find a

25      reasonable doubt.

26  RT 395-96.  The prosecution then completed its closing argument.

27       A jury break was then taken, during which the trial court, the prosecutor, and defense

28  counsel discussed the motion for a mistrial.  The court concluded that the prosecutor had "engaged

**United States District Court**
For the Northern District of California

9

in objectionable conduct.  I sustained the objection repeatedly and you persistently did not argue a failure to call logical witnesses" but rather "challeng[ed] the defense to bring forth evidence that they failed to bring forth."  RT 417.  However, the court denied the motion for a mistrial because, although there was objectionable conduct, it did not rise to the level to justify the relief sought and the court's admonition to the jury "to ignore the objectionable conduct [was] sufficient."  RT 418.

Subsequently, during the rebuttal closing, the prosecutor commented: "Now, they don't have to bring reasonable doubt.  They don't have to present any.  But you listen to their argument and all the defense said was, oh, maybe they're [*i.e.*, the victims] mistaken."  RT 452.  The prosecutor also asked: "What evidence is there in this trial to even suggest that it wasn't as bad as the victims testified?"  RT 452.

As a part of post-trial proceedings, defense counsel made a motion for a new trial.  The motion was based in part on the above statements that the prosecutor had made during closing.  The trial court denied the motion, noting, *inter alia*, that there were at least two occasions where it "misunderstood the argument [and] sustained the objection and . . . probably should not have."  RT 609.  The court indicated that, with respect to the objections that were sustained, the prosecutor's misconduct still did not render the trial fundamentally unfair.  The court also noted that a prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  However, the court stated that there were no such methods: "Certainly [the closing argument] was a passionate argument and one that was long but not one that was prejudicial."  RT 610.  Thus, the motion for a new trial was denied.

In short, the trial court concluded that some of the prosecutor's statements were objectionable but others were permissible and that, with respect to the objectionable statements, they did not result in a fundamentally unfair trial because of the curative instructions that the court issued.

As indicated by the above summary, the prosecutor's statements generally fall into one of two categories: (1) statements that Mr. Medina failed to present evidence (*e.g.*, evidence suggesting a motive to lie on the part of the victims) and (2) statements that, for evidence that he did present,

United States District Court

For the Northern District of California

1    that evidence was not enough to create a reasonable doubt.  The Court evaluates each of these

2    categories individually and then cumulatively in determining whether there is a basis for habeas

3    relief based on the prosecutor's comments.

4            1.      Failure to Present Evidence

5            Regarding the first category, the Court finds that the trial court's rulings were an objectively

6    reasonable application of clearly established federal law.  Under federal law, a prosecutor is

7    permitted to comment upon a defendant's failure to present evidence (*e.g.*, to contradict the

8    government's factual case or to support his own factual theories) so long as the comment is not

9    phrased to call attention to the defendant's failure to testify, *see United States v. Castillo*, 866 F.2d

10   1071, 1083 (9th Cir. 1998), or suggest that the defendant has an obligation to produce evidence to

11   prove his innocence.  *See United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996); *United States v.

12   Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993); *United States v. Parker*, 903 F.2d 91, 98 (2d Cir.

13   1990).  Under this standard, some of the comments made by the prosecutor were permissible – *e.g.*,

14   the statement that "the defense has failed to present any evidence of bias or motive to lie [on the part

15   of the victims]," RT 390; the statement that "you may consider the failure of the defense to call

16   logical witnesses," RT 392; and the statement asking "[w]hat evidence is there in this trial to even

17   suggest that it wasn't as bad as the victims testified?"  RT 452.

18           That being said, there is one comment that is problematic – more specifically, when the

19   prosecutor asserted: "The defense has a right to present evidence just like the people have the right

20   to present evidence.  Both sides – the defendant has a constitutional right to call anyone he wants."

21   RT 391.  The Court acknowledges that, here, the prosecutor never stated in express terms that Mr.

22   Medina had an obligation to produce evidence.  Rather, he noted only that "[t]he defense has *a right*

23   to present evidence."  RT 391 (emphasis added).  While technically true, this statement was

24   nevertheless improper, particularly when taken in context.  The prosecutor's full comment to the

25   jury was as follows: "The defense has a right to present evidence *just like the people have the right

26   to present evidence.  Both sides* – the defendant has a constitutional right to call anyone he wants."

27   RT 391 (emphasis added).  This statement was problematic because the prosecution, in contrast to

28

**United States District Court**

For the Northern District of California

1    the defense, did not simply have a right to present evidence; it had a *duty* to present evidence in

2    order to secure a conviction because it had the burden of proving its case beyond a reasonable doubt.

3          But, even assuming that the prosecutor's comment was improper, a prosecutor's improper

4    comment – even if "'universally condemned'" – does not constitute a violation of due process unless

5    the comment "'infected the trial with unfairness.'" *Darden v. Wainwright*, 477 U.S. 168, 181

6    (1986). The Supreme Court has indicated that, where the prosecutor's remark is an isolated incident

7    and there is an immediate curative instruction, there is no violation of due process. *See Greer v.*

8    *Miller*, 483 U.S. 756, 766-67 & n.8 (1987); *see also United States v. Fagan*, 996 F.2d 1009, 1016

9    n.7 (9th Cir. 1993) (stating that, to the extent there is any error when a prosecutor refers to a

10   defendant's failure to present evidence, that error is cured where a court "immediately admonish[es]

11   the jury that the defense [is] not required to produce any witnesses or evidence"). In fact, the

12   Supreme Court has stated that "[w]e normally presume that a jury will follow an instruction . . .

13   presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow

14   the court's instructions and a strong likelihood that the effect . . . would be 'devastating' to the

15   defendant."[3] *Greer*, 483 U.S. at 767 n.8; *see also United States v. Cardenas-Mendoza*, 579 F.3d

16   1024, 1030 (9th Cir. 2009) (stating that "[a] curative instruction may obviate the impact of the

17   government's statements, as juries are assumed to follow the court's instructions").

18         Here, it was not objectively unreasonable for the state court to find that the trial was not

19   rendered fundamentally unfair as a result of the prosecutor's comment because, after the prosecutor

20   made the comment, defense counsel objected, the objection was sustained, and the trial court

21   specifically instructed the jury to "ignore that last statement in the argument by counsel." RT 392.

22

_____

23         [3] And even where there is a constitutional error, habeas relief may be denied where the error
24   was harmless. For a habeas case, a constitutional error is not harmless where the error had a
     substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v.*
25   *Abrahamson*, 507 U.S. 619, 637 (1993); *see also Thompson v. Borg*, 74 F.3d 1571, 1576-77 (9th Cir.
     1996) (noting that only if the prosecutorial misconduct constituted a constitutional error "would we
26   have to decide whether the constitutional error was harmless" under *Brecht*). The Ninth Circuit has
     stated that not only curative instructions but also the strength of the case against a defendant are
27   considerations in determining whether the prosecutor's misconduct affected the jury's verdict. *See*
     *United States v. Stinson*, Nos. 07-50408, 07-50409, 2011 U.S. App. LEXIS 17979, at *34 (9th Cir.
28   Aug. 26, 2011) (applying the less demanding harmless error test of *Chapman v. California*, 386 U.S.
     18 (1967), which applies in direct appeals).

**United States District Court**
For the Northern District of California

1    Furthermore, the prosecutor immediately thereafter acknowledged to the jury that he had "to prove

2    the case beyond a reasonable doubt. . . . They [*i.e.*, the defense] don't have to call witnesses, ladies

3    and gentlemen." RT 392.

4        Mr. Medina argues still that the trial court did not sufficiently cure the prosecutor's

5    misconduct because its immediate admonishment to the jury to disregard the prosecutor's statement

6    "was quickly followed by further burden shifting argument." Traverse at 12. After the

7    admonishment, the prosecutor stated that

8
9
10
11
12

> the burden in this case is mine. I have to prove the case beyond a
> reasonable doubt. I'm not trying to shift the burden to the defense.
> They don't have to call witnesses, ladies and gentlemen. But you may
> consider the failure of the defense to call logical witnesses. If the
> defense makes an assertion for which there's no evidence, you may
> consider the fact that they didn't call any witnesses to support that
> assertion. You may consider that in deciding the guilt of the defendant
> that if they did have favorable evidence to support an assertion, they
> would have called that witness.

13    RT 392. Contrary to what Mr. Medina argues, it is not clear that the prosecutor engaged in improper

14    burden shifting, particularly in view of his express affirmance of the prosecution's burden of proof.

15    *See, e.g.*, *Balter*, 91 F.3d at 441 (noting that the prosecutor "commented on the failure of DeJesus's

16    attorney to point to any evidence in the record supporting his theory of what occurred" but stating

17    that "[s]uch a comment does not implicate any of the burden-shifting concerns that are raised when a

18    prosecutor points to a defendant's failure to testify or improperly suggests that the defendant has the

19    burden of producing evidence").

20        But even if the prosecutor's additional comments were improper, the trial court's repeated

21    admonitions, along with the clear final instructions, prevented the comment from "infect[ing] the

22    trial with unfairness." *Darden*, 477 U.S. at 181. More specifically, the trial court informed the jury,

23    as part of the final jury instructions, that (1) the jury was obligated to follow the law as stated by the

24    court, *see* RT 468; (2) if an attorney made a statement about the law that conflicted with the court's

25    instructions on the law, the court's instructions governed, *see* RT 468-69; (3) neither party was

26    "required to call as witnesses all persons who may have been present at any of the events disclosed

27    by the evidence who may appear to have some knowledge . . . [or] to produce all objects or

28    documents mentioned or suggested by the evidence", RT 474; (4) the prosecution had the burden of

United States District Court

For the Northern District of California

1  proving Mr. Medina's guilt beyond a reasonable doubt, *see* RT 479; and (5) Mr. Medina was entitled

2  to rely on the state of the evidence and upon the failure of the prosecution to prove its case beyond a

3  reasonable doubt. *See* RT 478-79.

4      In *United States v. Porter*, 431 F.2d 7 (9th Cir. 1970), the Ninth Circuit noted that the trial

5  court failed to instruct the jury "on the absence of a duty on the part of the defendant to produce

6  witnesses or evidence" but held that "the court's repeated instructions on the Government's burden

7  to prove every element . . . beyond a reasonable doubt adequately conveyed to the jury the thought

8  that defendant had no burden to produce evidence . . . ." *Id.* at 9. Here, as indicated above, the trial

9  court instructed the jury that Mr. Medina was not required to produce evidence *and* that the

10  prosecution had the burden of proving its case beyond a reasonable doubt.

11      2.      Evidence that Creates a Reasonable Doubt

12      As to the second category of prosecutorial comments – *i.e.*, statements that evidence

13  presented by Mr. Medina was not enough to create a reasonable doubt[4] – it is a closer call.

14      The Court begins by noting that, in litigating a criminal trial, the prosecution is not barred

15  from commenting on the evidence that the defendant presents. *See Hill v. Curry*, No. C 05-4572 SI

16  (pr), 2008 U.S. Dist. LEXIS 118673, at *21 (N.D. Cal. May 8, 2008) (stating that "[t]he prosecutor's

17  remarks were not an unjustified personal attack on the defense witness' ability to remember events,

18  but rather were permissible comment on the state of the evidence and did not amount to

19  misconduct"); *see also United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994) (stating that a

20  prosecutor may "summarize the evidence and comment on its quantitative and qualitative

21  significance"); *cf. United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991) (stating that "[i]t is a

22

23      [4] *See, e.g.*, RT 372 (prosecutor telling the jury to "listen if during their arguments they can

24  point to facts or if they do point to facts that create a reasonable doubt"); RT 392 (prosecutor noting that "the defense has presented some evidence but does it cast a reasonable doubt?"); RT 395-96

25  (prosecutor stating that "I'm merely trying to show you that certain – the facts that the defense has presented does not create a reasonable doubt").

26      Within this category, the Court also includes similar statements such as statements that the

27  jury should "listen carefully to [the defense's] clos[ing] argument to see if they provide you with a reasonable explanation that points to innocence," RT 372, and that the defense hasn't "raised a

28  reasonable doubt because all [Lieutenant] Farquhar said was that Sarah Moreno [sic] basically lied." RT 395.

United States District Court

For the Northern District of California

1   common practice for one side to challenge the other to explain to the jury uncomfortable facts and

2   inferences").  The prosecution, however, must tread carefully, particularly when referring to the

3   burden of proof.  *Cf. id.* (concluding that there was no improper burden shifting because "[t]he

4   prosecutor did not argue that a failure to explain [to the jury uncomfortable facts and inferences]

5   adequately required a guilty verdict, and, in fact, she reiterated throughout her closing that the

6   burden of proof was on the government"); *Lee v. Schwartz*, No. C 03-3889 SI (pr), 2004 U.S. Dist.

7   LEXIS 25198, at *58 (N.D. Cal. Dec. 9, 2004) (stating that, "[a]lthough the prosecutor argued that

8   no contradictory evidence had been presented by the defense, she did not mention the burden of

9   proof, let alone suggest that Lee bore the burden of proof" and thus "[h]er comments cannot

10  reasonably be construed to alter the burden of proof or suggest an alteration of the burden of proof").

11          Here, the prosecutor did not simply comment on defense evidence but rather went on to tie

12  the defense evidence to the burden of proof by stating that evidence presented by the defense did not

13  create a reasonable doubt.  Although the Supreme Court has used similar language in at least one of

14  its own opinions, *see Martin v. Ohio*, 480 U.S. 228, 234 (1987) (stating that, "[w]hen the

15  prosecution has made out a prima facie case and survives a motion to acquit, the jury may

16  nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about

17  the existence of any fact necessary for the finding of guilt"), the issue here is whether the *jury* could

18  have misunderstood the burden of proof based on that language.

19          In *United States v. Harrington*, 586 F.2d 860 (1st Cir. 1978), the First Circuit found that the

20  burden of proof was improperly characterized for the jury when a trial court first stated to the jury

21  that "[t]he only question is whether the [defense] evidence raises a reasonable doubt" and then

22  subsequently instructed the jury that, because the government has the burden of proving guilt by

23  proof beyond a reasonable doubt, "[t]hat is the reason why I made the comment during the argument

24  that the defendant's evidence has no greater function than simply to raise a reasonable doubt in your

25  minds, if it does.  The defendant is not required to go any further."  *Id.* at 862.  The court indicated

26  that the court's comments were inappropriate because, "'[i]nstead of requiring the government to

27  prove guilt,'" they essentially "'called upon [the defendant] to establish doubt in the jurors' minds.'"

28  *Id.*

The situation in the instant case is similar to that in *Harrington*.  In *Harrington*, the First Circuit condemned the trial court's statements regarding defense evidence raising a reasonable doubt.  Here, too, the prosecutor made the same kind of statements by arguing to the jury that Mr. Medina's evidence had not created a reasonable doubt.  The Court thus concludes, as did the First Circuit, that there was improper burden shifting as a result.

Furthermore, it should be noted that the prosecutor in the instant case did more than state that *evidence* presented by Mr. Medina did not create a reasonable doubt.  In one instance, the prosecutor specifically stated that "*they* [*i.e.*, the defense] haven't raised a reasonable doubt because all [Lieutenant] Farquhar said was that Sarah Moreno [sic] basically lied."  RT 395.  This statement clearly constitutes improper burden shifting.

However, as discussed above, prosecutorial misconduct is a violation of due process only where the misconduct "'infected the trial with unfairness.'"  *Darden*, 477 U.S. at 181.  It was not objectively unreasonable for the trial court to conclude that the trial was not rendered fundamentally unfair.  During his closing argument, the prosecutor essentially made five statements linking defense evidence and the burden of proof.  *See* RT 372 (two statements); RT 392 (one statement); RT 395 (one statement); RT 395-96 (one statement).  But the trial court gave immediate curative instructions in two instances when objections were made.  After the prosecutor asked the jury to see if the defense "provide[s] you with a reasonable explanation that points to innocence," the court stated that "[t]he use of the word 'innocence' there is inappropriate so I'll sustain the objection as to that."  RT 372.  After the prosecutor stated that the defense had not "raised a reasonable doubt because all Farquhar said was that Sarah Moreno [sic] basically lied," the trial court stated to the prosecutor that "you're admonished do not shift the burden back to the defense[;] [m]ake your arguments consistent with your burden, please."  RT 395.  And, as discussed above, as part of the final instructions, the trial court properly informed the jury that the prosecution bore the burden of proof by a reasonable doubt and, if an attorney made a statement about the law that conflicted with the court's instructions on the law, the court's instructions governed.

As above, Mr. Medina contends that the two curative instructions which were immediately given were insufficient because, even after they were given, the prosecutor continued to state that

defense evidence did not create a reasonable doubt.[5]  *See* RT 372 (after instruction given, prosecutor asking the jury to "[l]isten to the defense's arguments and listen if during their arguments they can point to facts or if they do point to facts that create a reasonable doubt"); RT 395-96 (after instruction given, prosecutor stating that "Officer Farquhar's testimony does not create a reasonable doubt" and that "I'm merely trying to show you that certain – the facts that the defense has presented does not create a reasonable doubt[;] [t]here's no evidence that the defense presented upon which you can rely to find a reasonable doubt").  But those statements did not necessarily undermine the force of the prior curative instructions – or at least it was not objectively unreasonable for the state court to so find.  The jury is presumed to have followed the court's instruction.  *See Greer*, 483 U.S. at 767 n.8.  Under *Greer*, Mr. Medina must show an "'overwhelming probability' that the jury will be unable to follow the court's instructions."  *Id.*  He has not done so.

Moreover, the prosecutor's statements must be viewed in context, not only with respect to the curative instructions given by the court as discussed above, but also with respect to the repeated statements by the prosecutor himself that the government shouldered the burden and not the defense.  *See, e.g.*, RT 373 ("look[ing] at if all the elements of the charges have been proved beyond a reasonable doubt"); RT 392 (stating that "I have to prove the case beyond a reasonable doubt" and "I'm not trying to shift the burden to the defense"); RT 395-96 (stating that "I'm not trying to shift the burden"); RT 452 (stating that "they [*i.e.*, the defense] don't have to bring reasonable doubt").

Finally, the Court notes that, given the strength of the case against Mr. Medina, it is unlikely that the prosecutor's two comments which were not expressly addressed by curative instructions had a devastating effect as required by *Greer*.  As the Court noted in *Greer*, the presumption that the jury will follow an instruction is rebutted only where "there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions *and* a strong likelihood that the effect . . . would be 'devastating' to the defendant."  *Greer*, 483 U.S. at 767 n.8 (emphasis added).  As discussed above, both Elena and Jennifer provided testimony about the sexual abuse that they had suffered, and their claims were corroborated not only by one another's testimony but also by the testimony of

---

[5]  There were no objections to these additional statements by the prosecutor.

United States District Court

For the Northern District of California

1   Maria, who in turn had her claims corroborated by her sister's testimony.  Moreover, testimony

2   about the two meetings held to address Mr. Medina's conduct also supported the victims' claims.

3         Accordingly, the Court concludes that Mr. Medina has failed to establish a constitutional

4   error sufficient to satisfy AEDPA.

5         3.      <u>Cumulative Effect</u>

6         Finally, the Court notes that, even if it were to consider the cumulative effect of the

7   prosecutor's statements in the two categories discussed above, its analysis above would not differ for

8   the reasons stated above.  The Court thus denies habeas relief on the first due process claim.

9   B.    <u>CALJIC 2.50.01</u>

10        Mr. Medina also argues that his right to due process was violated when the trial court read to

11  the jury as part of the final instructions the 1999 revision of CALJIC No. 2.50.01.

12        CALJIC No. 2.50.01 instructs on prior sexual offenses.  The instruction as given by the trial

13  court was as follows:

14              If you find that the defendant committed a prior sexual offense,
       you may but are not required to infer that the defendant had a
15     disposition to commit sexual offenses.  If you find that the defendant
       had this disposition, you may but are not required to infer that he was
16     likely to commit and did commit the crime or crimes of which he is
       accused.  *However, if you find by a preponderance of the evidence that*
17     *the defendant committed a sexual offense, that is not sufficient by itself*
       *to prove beyond a reasonable doubt that he committed the charged*
18     *crimes.*  The weight and significance of the evidence, if any, are for
       you to decide. . . . Within the meaning of the preceding instruction, the
19     prosecution has the burden of proving by a preponderance of the
       evidence that the defendant committed sexual offenses other than
20     those for which he is on trial.  You must not consider the evidence for
       any purpose unless you find by a preponderance of the evidence that a
21     defendant committed the other sexual offenses.

22  RT 477-78 (emphasis added).

23        Mr. Medina takes issue with the sentence italicized above.  More specifically, he contends

24  that the natural implication of the sentence is that, if the jury found that he committed the prior

25  sexual offense by a *more* demanding standard of proof (such as beyond a reasonable doubt), then

26  that would be sufficient by itself to prove beyond a reasonable doubt that he committed the charged

27  crimes.  Mr. Medina also points out that the prosecutor did, in fact, argue that he had proven the

28  prior sexual offenses not simply by a preponderance of the evidence but rather beyond a reasonable

**United States District Court**
For the Northern District of California

1   doubt.  *See* RT 398-99 (prosecutor stating, "I submit to you that those uncharged acts have been

2   proved beyond a reasonable doubt even though they only have to be proved by a preponderance of

3   the evidence").

4   　　　For this due process claim, there is no reasoned state court decision for this Court to review

5   and therefore this Court conducts an independent review of the record to determine whether the state

6   court's decision was an objectively unreasonable application of clearly established federal law.  *See*

7   *Stanley*, 633 F.3d at 860.

8   　　　To obtain federal habeas relief for an error in a jury instruction, a petitioner must show that

9   "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

10  process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The instruction may not be judged in

11  isolation but must be considered in the context of the instructions as a whole and the trial record.

12  *See id.*

13  　　　In the case at bar, the version of CALJIC No. 2.50.01 that was given here (*i.e.*, the 1999

14  revision) was not the same as the instruction deemed improper by the Ninth Circuit in *Gibson v.*

15  *Ortiz*, 387 F.3d 812 (9th Cir. 2004), *overruled in part by Byrd v. Lewis*, 566 F.3d 855 (9th Cir.

16  2009).  In the instant case, the instruction explicitly reminded the jury that it had to find the

17  defendant committed the charged offense beyond a reasonable doubt, in contradistinction to finding

18  he committed prior offenses.  Accordingly, *Gibson* is not controlling.

19  　　　The claimed defect here lies in the alleged negative pregnant that, if the jury were to find

20  defendant committed past offenses by proof beyond a reasonable doubt (instead of a preponderance),

21  they could find by that fact alone that he committed the charged offense beyond a reasonable doubt.

22  That is a strained reading of the instruction.  Certainly, the instruction on its face does not state that

23  a jury finding that a prior sexual offense was committed beyond a reasonable doubt is enough to

24  prove beyond a reasonable doubt that a defendant committed the charged crimes.  At best the

25  instruction contains some ambiguity.  *See Mejia v. Garcia*, 532 F.3d 1036, 1045 (9th Cir. 2008)

26  (stating that, because "reasonable minds can differ in their reading of whether the instruction allows

27  for conviction on the non-sexual offenses based on a burden of proof other than beyond a reasonable

28  doubt," that only "underscores the instruction's ambiguity").  Where an instruction is ambiguous,

United States District Court

For the Northern District of California

1  the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction

2  in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & n.4;  *see also Ho v. Carey*, 332

3  F.3d 587, 592 (9th Cir. 2003) (stating that, where an instruction is erroneous *on its face*, then a court

4  does not use the reasonable likelihood standard employed for ambiguous instructions).

5          In the case at bar, it is highly unlikely that, because of CALJIC No. 2.50.01, the jury thought

6  it could have found Mr. Medina guilty of the crimes charged based solely on the prior sexual

7  offenses, so long as those prior offenses were proven beyond a reasonable doubt.  This is so, not

8  only because the challenged instruction reiterated the proper burden of proof as to the charged

9  crime, but also because the trial court also instructed the jury for each crime charged that, in order to

10 prove the crime, particular elements had to be satisfied.[6]  *See* RT 479, 488, 490-95.  For example, for

11 the oral copulation counts, the trial court instructed that, "[i]n order to prove this crime, each of the

12 following elements must be proved: one, a person participated in an act of oral copulation with an

13 alleged victim, and two, the act was accomplished against the alleged victim's will by means of

14 force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the alleged

15 victim or any other person."  RT 490.  It is impossible for each of those elements to have been

16 proven based solely on the fact of a prior sexual offense.

17         Notably, this was the very reasoning that drove the California Supreme Court's decision in

18 *People v. Reliford*, 29 Cal. 4th 1007 (2003), in which the court rejected the "defendant's contention

19 that the [same] instruction [as here] 'implies by way of a negative pregnant that prior sex offenses

20 proved beyond a reasonable doubt are indeed sufficient to prove the present offense beyond a

21 reasonable doubt.'"  *Id.* at 1015 (stating that "no juror could reasonably interpret the instructions to

22 authorize conviction of a charged offense based solely on proof of an uncharged sexual offense[;]

23 [i]t is not possible, for example, to find each element of the charged crimes, as the jury was

24 instructed to do before returning a guilty verdict, based solely on the 1991 offense").

25

26  ───────────────

27         [6]  The trial court also instructed: (1) "[E]ach fact which is essential to complete a set of
    circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable
28  doubt," RT 472, and (2) "[n]o lack of testimony on the defendant's part will make up for a failure of
    proof by the people so as to support a finding against him on any such essential element."  RT 478.

**United States District Court**

For the Northern District of California

1 Furthermore, the Court notes that the same argument has been presented by other habeas

2 petitioners to no avail – *i.e.*, each district court has upheld the constitutional validity of the 1999

3 revision of CALJIC No. 2.50.01.  *See, e.g.*, *McCormick v. Adams*, No. CIV S-05-0735 JAM GGH,

4 2008 WL 2561101, at *14 (E.D. Cal. June 24, 2008) (rejecting petitioner's argument that "the

5 instruction implies that when prior sexual acts are proved beyond a reasonable doubt, such evidence

6 can itself prove the charged offense beyond a reasonable doubt" by denying habeas relief; noting

7 that numerous federal courts have rejected petitioner's arguments with respect to the instruction's

8 constitutionality); *Burleson v. Kernan*, No. C 05-1263 SI (pr), 2007 WL 3478432, at *21-23 (N.D.

9 Cal. Nov. 15, 2007) (taking note of state appellate court's statement that "[t]he instruction did not

10 imply by way of a negative pregnant that prior sex offenses proven beyond a reasonable doubt are

11 sufficient to prove the present offense beyond a reasonable doubt"; ultimately denying relief);

12 *Goldthread v. Woodford*, No. CIVS050283FCDCMKP, 2006 WL 47394, *4-6 (Jan. 9, 2006) (report

13 and recommendation) (rejecting petitioner's argument that the instruction "'implies by way of a

14 negative pregnant that if a prior sexual offense is proven by a standard higher than preponderance of

15 the evidence, such evidence is sufficient to prove the current charges beyond a reasonable doubt'"

16 by denying habeas relief), *adopted by* 2006 WL 509414 (E.D. Cal. Mar 2, 2006); *Kagel v. Scribner*,

17 No. C 03-3978-PJH, 2004 WL 1777381, at *13-15 (N.D. Cal. Aug. 6, 2004) (rejecting petitioner's

18 argument that the instruction "impl[ies] that the jury could find him guilty of the charged offense,

19 regardless of the relevant evidence, if it found beyond a reasonable doubt that he had committed

20 similar prior offenses" by denying habeas relief).  It appears that no court has accepted Mr.

21 Medina's argument.  Taking into account all of the above, the Court concludes that there is not a

22 reasonable likelihood that the jury applied the challenged instruction in a way that violates the

23 Constitution.

24 Finally, the Court notes that, even if Mr. Medina could establish a constitutional error (*i.e.*, a

25 reasonable likelihood that the jury applied the instruction in a way that violates due process), that

26 would not be the end of the inquiry.  Contrary to what Mr. Medina argues in his petition, an

27 instructional error of the kind claimed here is not a structural error, *see* Pet. at 19, but rather one

28 subject to harmless error review.  This was made clear by the Ninth Circuit's holding in *Byrd v.*

1    *Lewis*, 566 F.3d 855 (9th Cir. 2009).  In *Byrd*, the Ninth Circuit expressly overruled *Gibson* "to the

2    extent it applies structural error review to an instructional error that affects only an element of the

3    offense, a permissible evidentiary inference, or a potential theory of conviction, as opposed to an

4    instructional error that affects the overarching reasonable doubt standard of proof."  *Id.* at 866.  The

5    court explained that the prior version of CALJIC No. 2.50.01 should have been subject to harmless

6    error review because it affected only a potential theory of conviction and did not vitiate all of the

7    jury's findings:

8           The jury could have convicted Gibson on the theory that the inference
            from the prior uncharged acts warranting a finding of guilt, *or* it could
9           have convicted Gibson on the theory that the direct testimony of the
            victim regarding the charged offenses warranted a finding of guilt, *or*
10          on some combination of the two theories.

11   *Id.* (emphasis added).  The same is true in the instant case – *i.e.*, even if the jury had misunderstood

12   CALJIC No. 2.50.01, the jury could have convicted Mr. Medina based either on the prior sexual

13   offenses involving Maria or the direct testimony of Elena and Jennifer.  *Byrd* dictates that harmless

14   error analysis applies in this circumstance.

15          In the habeas context, a constitutional error is not harmless where the error had a substantial

16   and injurious effect or influence in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507

17   U.S. 619, 637 (1993).  Here, the state trial court could have properly concluded that any

18   instructional error was harmless.  Such a conclusion would not be objectively unreasonable in light

19   of the substantial, indeed overwhelming, evidence presented against Mr. Medina as to the charged

20   offense discussed above.

21   C.     Propensity Evidence

22          Mr. Medina further claims a due process violation based on CALJIC No. 2.50.01 because the

23   instruction permitted the jury to infer his guilt based on propensity evidence.  As above, there is no

24   reasoned state court decision disposing of this claim, and so this Court conducts an independent

25   review of the record to determine whether the state court's decision was an objectively unreasonable

26   application of clearly established federal law.  *See Stanley*, 633 F.3d at 860.

27          In his petition, Mr. Medina asserts that "[c]ases decided after *Estelle v. McGuire* indicate . . .

28   that it is improper to instruct a jury in a way which allows them to convict the defendant on the basis

United States District Court

For the Northern District of California

1   of character, disposition or propensity." Pet. at 21. The Court concludes that the state court

2   decision was not objectively unreasonable for two reasons. First, the Supreme Court has left open

3   the question of whether admission of propensity evidence violates due process. *See Estelle*, 502

4   U.S. at 75 n.5. Based on the Supreme Court's reservation of this issue as an open question, the

5   Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity

6   evidence is not clearly established as required by AEDPA. *See Alberni v. McDaniel*, 458 F.3d 860,

7   866-67 (9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming

8   *Alberni*).

9       Second, in support of his argument, Mr. Medina cites only *Old Chief v. United States*, 519

10  U.S. 172 (1997). In *Old Chief*, the Supreme Court did not make any ruling on whether a defendant's

11  due process rights are violated through the use of propensity evidence. It simply held that, under

12  Federal Rule of Evidence 404(b), propensity evidence is generally inadmissible and, thus, there is

13  "no question that propensity would be an 'improper basis' for conviction." *Id.* at 182. Furthermore,

14  because the defendant in *Old Chief* did not commit a sexual offense, *see id.* at 174 (noting that the

15  "federal charges included not only assault with a dangerous weapon and using a firearm in relation

16  to a crime of violence but violation of 18 U.S.C. § 922(g)(1)"), the Supreme Court did not have

17  occasion to comment on Federal Rule of Evidence 413 or 414, which expressly permit the use of

18  propensity evidence in sexual assault and child molestation cases, respectively. Notably, in *United*

19  *States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), the Ninth Circuit held that Rule 414 does not violate

20  due process because the evidence is still subject to the trial court's balancing test which provides for

21  meaningful review. *See id.* at 1031.

22  D.   Ineffective Assistance of Appellate Counsel

23      Because his appellate counsel did not raise any of the issues discussed in Part II.A-C, *supra*,

24  Mr. Medina asserts that he received ineffective assistance of counsel in violation of his Fourteenth

25  Amendment rights.[7]

26  _____

27      [7] The heading for the claim for ineffective assistance of appellate counsel, *see* Pet. at 22; *see also* Traverse at 19, suggests that Mr. Medina is also arguing ineffective assistance based on

28  counsel's failure to exhaust the remaining issues discussed below. *See* Part II.E-G, *infra*. There is, however, no substantive argument in either the petition or traverse on any failure to exhaust.

**United States District Court**
For the Northern District of California

Again, in the absence of a reasoned state court decision on this issue, this Court conducts "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006).

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1101, 1106 (9th Cir. 2010); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. *See Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106. Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *See Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The vetting of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See id.* at 1434. It is not uncommon for appellate counsel to meet the objective standard of competence and have caused no prejudice to his/her client by declining to raise a weak issue. *Id.*

In the instant case, Mr. Medina has not met his burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). As to counsel's failure to raise the first claim, arguably, that constituted objectively deficient performance. There does not appear to have been a strategic reason not to raise the burden-of-proof claim. As the

Accordingly, the Court does not address the argument in this order.

24

United States District Court

For the Northern District of California

1    Court's discussion above reflects, the prosecutor did engage in some improper burden shifting; thus,

2    the claim was not a frivolous or weak one.

3         However, as noted above, Mr. Medina must also establish prejudice, and, it is not reasonably

4    probable Mr. Medina would have prevailed on that issue on appeal, particularly given the weight of

5    the evidence against him.  *See, e.g.*, *Nha Dac Ho v. Tilton*, No. SACV 08-655 VBF (JC), 2011 U.S.

6    Dist. LEXIS 117907, at *54-55 (C.D. Cal. Sept. 1, 2011) (stating that, "[i]n light of the ample

7    evidence available to the prosecutor to impeach any claim of innocence by petitioner had he

8    testified, and the weight of the evidence against petitioner, this Court cannot say that the California

9    Supreme Court's rejection of this ineffective assistance of counsel claim was objectively

10   unreasonable").  As to counsel's failure to raise the second and third claims, there, counsel's

11   performance cannot be considered objectively unreasonable given the weakness of both claims

12   (instructional error and propensity evidence) as discussed above.  Moreover, the prejudice analysis

13   would apply to these claims as well.

14   E.    Sufficiency of Corroborating Evidence

15        The conduct against Elena and Jennifer took place in the late 1980's and the early 1990's.

16   Mr. Medina was not charged, however, until 2003.  Ordinarily, the statute of limitations would have

17   been a bar to the prosecution, *see* Cal. Pen. Code § 800 (2003) (providing that prosecution for an

18   offense punishable by imprisonment in the state prison for eight years or more shall be commenced

19   within six years after commission of the offense), but California Penal Code § 803(g)(2)(B), as it

20   then existed, allowed a criminal complaint to be filed within one year of the date of a report to a

21   California law enforcement agency by a person alleging that she, while under the age of 18 years,

22   was the victim of certain sexual crimes (including those at issue in the instant case) so long as there

23   was independent evidence that clearly and convincingly corroborated the victim's allegation.  *See*

24   Cal. Pen. Code § 803(g)(2)(B) (2003).  According to Mr. Medina, his due process rights and rights

25   against an ex post facto prosecution were violated because there was insufficient evidence to

26   corroborate Elena and Jennifer's claims, particularly by the clear and convincing standard.

27        Mr. Medina argues that the sexual abuse of Maria was not sufficiently similar to the sexual

28   abuse of Elena and Jennifer to constitute clear and convincing corroborating evidence, not only

United States District Court

For the Northern District of California

1  because the former abuse was not temporally proximate to the latter but also because the former

2  abuse was not "factually close" to the latter.  Pet. at 24 (arguing that the former abuse was not

3  temporally proximate nor factually close to the latter abuse).  While the former abuse did take place

4  more than ten years before the latter, Mr. Medina fails to cite any authority showing that temporal

5  proximity is dispositive.  Moreover, putting the abuse of Maria aside, the abuse of Elena was

6  temporally proximate to the abuse of Jennifer, and, as the appellate court found in rejecting this

7  claim, "Jennifer's testimony was available to corroborate Elena and vice versa." *Medina*, 2004 Cal.

8  App. Unpub. LEXIS 9353, at *14.  The state appellate court also found that the abuse of Maria, the

9  abuse of Elena, and the abuse of Jennifer were sufficiently similar; Mr. Medina molested each girl

10  when she was quite young, and in each instance he followed the pattern of taking advantage of a girl

11  who was part of an extended group of family and friends.  The court also noted the abuse was

12  similar in that Mr. Medina "took advantage of fleeting opportunities," *e.g.*, "behind a bush, behind a

13  dumpster, or inside the house when everyone else was outside or in another room." *Id.* at *15.

14  Finally, the state appellate court pointed out that there was other corroborating evidence to support

15  Jennifer and Elena's testimony, including the family meeting held to discuss Mr. Medina's behavior

16  in 1991.  *See id.*  Thus, the state appellate court's rejection of this claim was not objectively

17  unreasonable.  The Court therefore denies the request for relief.

18  F.      Sufficiency of Evidence on Masturbation and Force

19        Mr. Medina argues next that he due process rights were violated because: (1) on count 12

20  (lewd or lascivious acts on a child), there was insufficient evidence to support the claim that Mr.

21  Medina had masturbated when he came up behind Jennifer, rubbed her chest, and pressed up against

22  her; (2) on counts 1-5 (forcible lewd or lascivious acts on a child), there was insufficient evidence

23  that Mr. Medina had used force against Elena when putting her hand on his penis; and (3) on counts

24  6-10 (forcible oral copulation), there was insufficient evidence that Mr. Medina had used force

25  against Elena when putting his penis in her mouth.

26        The state appellate court's rejection of each of these arguments was not objectively

27  unreasonable, and therefore Mr. Medina is not entitled to any relief.  For example, it was not

28  objectively unreasonable for the state court to reject Mr. Medina's position that masturbation

United States District Court

For the Northern District of California

1   requires hand-to-genital contact and skin-to-skin contact.  The appellate court stated that "[i]t is

2   unreasonable to assume that by defining 'substantial sexual conduct' as including 'masturbation' the

3   Legislature intended to include touching of the offender's genitals with the child's hand but to

4   exclude from that definition the use of any other part of the child's body"; it also stated that

5   "masturbation, as it is common understood, may be accomplished through the clothing as well as by

6   direct contact with bare skin."  *See id.* at *19-20.  Nor was it unreasonable for the state appellate

7   court to find that Mr. Medina used force substantially different from or substantially greater than

8   necessary against Elena by squeezing her hand to keep her hand on his genitals or by pushing her

9   into the bathroom for oral copulation.  *See id.* at *24 (noting that, in a prior case, a court found that

10   force was used when the victim, an eight-year-old child, tried to pull her hand away from the

11   defendant's crotch but the defendant pulled it back).

12   G.     Verdict Form

13          Finally, Mr. Medina contends that his due process rights were violated because of an

14   improper verdict form.  For each of the counts charged, the jury had to make a § 803(g) finding in

15   order to convict – *i.e.*, that there was clear and convincing evidence to corroborate the victims'

16   allegations, thus permitting the extended statute of limitations.  For counts 1-5 and count 12, there

17   was a specific blank in the verdict form for the jury to make the § 803(g) finding:

18                  We further find the allegation that the offense charged above was

19                  committed within the meaning of Penal Code section 803(g)

20                  _____

21                  Not true/true

22   *See, e.g.*, CT 352.  However, for counts 6-10 and counts 11, the verdict form failed to contain the

23   same provision.  Mr. Medina asserts that the testimony of Maria constituted the corroborating

24   evidence for all of the counts and that the abuse of Maria was

25                  virtually identical or quite similar to those counts whose verdict forms
                    required the section 803, subdivision (g) finding [*i.e.*, counts 1-5
26                  (forcible lewd or lascivious acts on a child) and count 12 (lewd or
                    lascivious act on a child)].  In contrast, [Maria's] victimization was
27                  quite different from the five acts of oral copulation charged in counts
                    six through ten and the act of forcible penetration charged in count 11.
28                  . . .

27

> As a result, there is a reasonable likelihood that had the jury been provided correct verdict forms it would not have found that counts six through eleven qualified for the extended statute of limitations. [Maria's] victimization was not temporally proximate to the charged crimes. The jury may have concluded nevertheless that [Maria's] testimony corroborated counts one through five and twelve because those acts – masturbation, breast touching, and body-to-body contact – were virtually identical to the acts she reported. But it is reasonable to assume the jury would not have engaged in the same compromise with respect to counts six through eleven, because they were neither proximate nor similar to what [Maria] described.

Pet. at 30.

The state court of appeal rejected this same basic argument in its opinion denying habeas relief. The court held that the jury's intent to convict Mr. Medina on all counts was "unmistakably clear"; moreover, "[t]he jury was fully and properly instructed." *Medina*, 2004 Cal. App. Unpub. LEXIS 9353, at *35. The court added that there was "no indication that the jury was confused about the absence of a place for the section 803, subdivision (g) finding"; in fact, "the jury reached its verdict in less than two hours." *Id.*

The Court concludes that, at the very least, the state appellate court's conclusion that any verdict form error was harmless was reasonable. *See Towery v. Schriro*, 641 F.3d 300, 307 (9th Cir. 2010) (noting that, although "the Arizona Supreme Court did not specifically address whether Towery's federal due process rights were violated," it "performed the same harmless error analysis it was required to do for a constitutional violation under *Chapman v. California*, 386 U.S. 18, 24 (1967), and its conclusion warrants our deference"). Even if the specific sexual acts committed against Maria and Elena differed, there was, as the state appellate court noted, sufficient similarity in Mr. Medina's modus operandi with respect to each girl. As the appellate court found,

> [t]he fact that Maria did not describe any acts of oral copulation or vaginal penetration does not diminish the strength of the evidence corroborating the allegations contained in counts 6 through 11. The corroborating evidence showed that defendant preyed upon little girls who were part of his extended family circle, grabbing them when chance would permit, and using them to arouse himself, most often by having them stimulate his penis. In light of such evidence, defendant's argument that the jury might not have found counts 6 through 11 to be clearly and convincingly corroborated is pure speculation. The absence of the express finding in the verdict forms was harmless.

*Id.* at *36.

Accordingly, the Court rejects Mr. Medina's argument that he is entitled to relief on the basis that trial counsel provided ineffective assistance by failing to object to the verdict form on counts 6-10 and count 11.  The Court therefore denies the request for habeas relief on this ground.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Mr. Medina has failed to establish that he is entitled to relief under the standards laid out in AEPDA.  Accordingly, his petition for habeas relief is hereby denied.

IT IS SO ORDERED.

Dated:  January 23, 2012

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

29